**This order is SIGNED.**

**Dated: December 7, 2020**

**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Roy Nielsen Hafen,<br><br>Debtor. | Bankruptcy Number: 04-25018<br><br>Chapter 7<br><br>Judge William T. Thurman |

**MEMORANDUM DECISION REGARDING THE TRUSTEE'S MOTION TO SELL PROPERTY**

**BACKGROUND AND FACTS:**

      This is a Memorandum Decision memorializing what was read into the record on Monday November 23, 2020 at 10:00 AM. Accordingly, this Memorandum Decision supports the order issued on the same date at Docket entry 114, the Court specifically having reserved the right to issue this Memorandum Decision. This matter is before the court on the Trustee's *Motion to Sell Property* ("The Motion").[1] The Motion seeks to sell any interests that the estate may have in certain

---

[1] Docket No. 96.

property which is described in The Motion, as: (1) the Debtor's 10 percent ownership interest in DANIEL ROY HAFEN, LTD, including any property acquired as a result of that ownership interest; (2) the Debtor's 10 percent ownership interest in ACOM, LLC, including any property acquired as a result of that membership interest; (3) the Debtor's beneficial ownership interest in the C.A.R. TRUST and sometimes referred to as the C.A.R. A Trust; (4) the Debtor's claim in water rights 71-298, currently in the name of Daniel R. Hafen and Alta Mae Hafen (both deceased), and; (5) the Debtor's claim in DANIEL ROY HAFEN, LTD's shares of the Pinto Irrigation Company, a Utah corporation. The Response by the Trustee to Debtor's objection to the sale at docket 107 clarifies that item (5) is actually the interests in any property received as a result of the Debtor's ownership interest in Daniel Roy Hafen, LTD and is accordingly duplicative of item (1). In addition, the Trustee seeks to sell his avoidance and fraudulent transfer claims pertaining to the above property under 11 U.S.C. §§ 544, 547, 548, and 549.[2] All of this collectively will hereafter be referred to as the alleged or simply the "Estate Property." The total purchase price is $15,277.00 in cash.

First, the Court would like to summarize the posture of this matter and how it came to be here today. The Debtor, Mr. Roy Nielson Hafen, filed for chapter 7 bankruptcy relief in 2004 and listed unsecured debts of $5M, assets of $11,000, and Trustee returned a gross amount of $5,000 to creditors.[3] The case was closed on May 11, 2005. The case was reopened in 2018.[4]

On July 19, 2018, several creditors from the bankruptcy case filed a lawsuit against the Debtor and others in the Fifth Judicial District Court, Washington County, State of Utah (the "State Lawsuit" or "State Case"). The State Case was captioned *Adams, et al. v. Hafen, et al.*, Civil No.

---

[2] Docket No. 96.
[3] *In re Hafen*, 616 B.R. 570 (10th Cir. BAP 2020); Docket No. 18.
[4] Docket Nos. 28 (motion) & 34 (order).

180500337.[5] The plaintiffs in the State Case (the "State Case Plaintiffs" or "Creditors") sued the Debtor and a number of non-case parties on the basis of twelve claims for relief including fraud, securities violations, civil conspiracy, and avoidance claims. Each of the State Case Plaintiffs claimed $200,000 or more in damages from that litigation.[6] Each State Case Plaintiff was listed on the original schedules as an unsecured creditor and received notice of the bankruptcy.[7]

The Trustee did not pursue any fraudulent/ voidable transfers. The Debtor received a discharge on July 21, 2004. In June of 2018, the Creditors filed a motion with this Court to reopen the case which was granted.[8] The Plaintiffs/ creditors alleged inappropriate conduct by the Debtor years ago in transferring assets to others and wanted a trustee appointed to investigate these. In December 2018, the Debtor filed a motion in this case seeking sanctions against the Creditors and seeking to enforce the discharge injunction as the Plaintiffs named him as a co-defendant as well as several others who allegedly received some sort of an avoidable transfer in the State Case.[9] As a defense to the Debtor's motion, the State Case Plaintiffs claim that, pursuant to 11 U.S.C. § 524(e), they may name the Debtor in their State Court Case for the sole purpose of creating a conduit of liability to the transferees for claims which establish Debtor's liability but do not seek to collect damages against him.[10] In the Debtor's Motion for Sanctions, he argued that relevant case law provides that in order to name the debtor as a party in the state case, the debtor must also be a necessary/ required party in order to satisfy the exception to the discharge protection in § 524(e). That section provides that a debtor's discharge "does not affect the liability of any other

---

[5] *Adams, et al. v. Hafen, et al.*, Civil No. 180500337
[6] *Id.*
[7] *In re Hafen;* Docket Nos. 2 & 4.
[8] Docket Nos. 28 & 34.
[9] Docket No. 37.
[10] Docket No. 50.

3

entity on or the property of any other entity..."[11] The Debtor also argued that, to the extent that the debtor was a necessary/required party, those claims would belong to the Trustee.[12] That specific matter of violating the discharge is not before the court in the current motion.

This Court ruled in April of 2019[13] that there was no violation of the discharge by the State Court Plaintiffs naming the Debtor as a defendant in the State Case based on the principles and persuasive authority found in *In re Walker*[14] and *In re Robben*.[15] The Court read the word "necessary" as found in the *Walker* case, not to mean the same thing as a "required" party under the rules of joinder. Rather, the word "necessary" as used by the circuit described a situation in which the appearance of the debtor in the case was needed to establish the elements of the liability.

This court's decision was appealed to the 10th Circuit's BAP.[16] The BAP did not overturn this Court's ruling on the law as to the meaning of "necessary" but determined that there were issues of standing in the State Court Lawsuit that should be considered by this Court. Consistent with the decision of the Panel, a status conference was held before this Court on October 8, 2020 to consider issues of standing. All parties agreed to continue the matter to October 29th in order to first resolve the Trustee's Motion presented here today,[17] the reasons being that 1) the proposed sale could potentially have impact on the question of standing and 2) the need to adjudicate the case expeditiously for all involved. The impact of granting this Motion would be to liquidate these rights for possibly a lower amount than which the Plaintiffs are seeking in the State Court Action. Now that the matter is back before the Court, the Trustee seeks to sell what claims, if any, the

---

[11] 11 U.S.C. § 524(e).
[12] Docket No. 51.
[13] Docket Nos. 68 and 69
[14] *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991).
[15] *In re Robben*, 562 B.R. 469 (Bankr. D. Kan. 2017); *See* Docket Nos. 68 & 69.
[16] *See* Docket No. 82.
[17] *See* Docket No. 99.

estate may have in all the Estate Property named at the beginning of this ruling to the State Court Plaintiffs, which may have some overlap impact on the state case, but that impact is not directly before the Court today. Again, the State Court Plaintiffs are suing the non-case parties in an attempt to recover property allegedly and improperly transferred to them by the Debtor. The trustee sent notice of his intent to sell the Estate Property to all parties on the mailing matrix. It requested any higher or better offers. None were made. A hearing on the Trustee's motion was held on October 29, 2020. With due respect for the BAP's decision, the Court determines it should defer ruling on standing in the state Court until after the issuance of this decision.

The Debtor objected to these proposed sales/ assignments by the Trustee on five[18] grounds: (1) the interests in the property are subject to transfer restrictions; (2) the Debtor and therefore the Trustee has no beneficial interest in trusts contained in the property to be sold; (3) the Trustee cannot sell water rights because they never belonged to the Debtor; (4) the Trustee must file an adversary proceeding to determine the property of the estate; and (5) the court must determine if the claims are property of the estate before they are sold.

**JURISDICTION AND VENUE:**

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) (A), (M), and (O), and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1408. The Court finds notice to be proper in all respects.

---

[18] Docket No. 100.

**RULING:**

The Court has had time to consider and read the briefs of all parties and conduct additional research after the oral argument heard on October 29th. The Trustee essentially seeks to sell the interests in the Estate Property as analogous to a quitclaim deed in an "as is, where is and if is" type-transaction. These rights could be and are properly classified as a combination of property rights in whatever the estate owns as well as litigation rights (i.e. avoidance claims).

### WATER RIGHTS AND ANY RIGHT TO THE C.A.R. TRUST

The water rights and any interest in the CAR trust may be transferred, even if the existence of those rights is questionable. The statutory treatment of quitclaim deeds in Utah is instructive to the nature of the conveyed interests:

> A quitclaim deed when executed as required by law shall have the effect of a conveyance of all right, title, interest, and estate of the grantor in and to the premises therein described and all rights, privileges, and appurtenances thereunto belonging, at the date of the conveyance.[19]

Indeed, "[q]uitclaim deeds 'do not imply the conveyance of any particular interest in property' but rather convey only the interest the grantor holds at the time, 'be that interest what it may.'"[20]

The issuance of a quitclaim deed is akin to the assignment of a litigation claim. In a case out of the Delaware Bankruptcy Court determined that the trustee could sell rights to property, the ownership of which was in question and most likely would result in a lawsuit after the sale of that property.[21] "By issuing a quitclaim deed, the grantor does not guarantee that it has any actual

---

[19] U.C.A. § 57-1-13 (West 2020).
[20] *Wells Fargo Bank v. Noerring*, 438 P.3d 90 n. 10 (Utah 2018) citing *Nix v. Tooele County*, 118 P.2d 376, 377 (Utah 1941). *See also Holladay Towne Center v. Brown Family Holdings*, 248 P.3d 452 (Utah 2011) (explaining that a "quitclaim deed conveys whatever interest the grantors possess at the time" (quotation simplified)).
[21] *In re Atlantic Gulf Communities Corp.*, 326 B.R. 294, 300 (Bankr. D. Del. 2005)

interest in the property conveyed."[22] The reasoning of that case is persuasive with this Court. Thus, as the Court sees it, there is no restriction to the Trustee selling whatever the estate has in the water rights and the rights of the Debtor in the CAR Trust, even if it is in dispute or even if, at the end of the day, it is determined that no interests exist. Accordingly, the Court overrules Debtor's fourth and fifth arguments.

Further, Section 363(f)(4) gives some guidance here. That statute provides that in sales free and clear of liens, the Trustee may sell such if such interest (ownership interest) is in bona fide dispute. The Trustee here is not seeking to sell the interests free and clear. However, it appears to the court that if a Trustee is allowed to sell interests where there are bona fide disputes free and clear, selling such not free and clear is even more permissible.

Other arguments put forward by the Debtor to stop this sale are allegations of what the exact interests owned by the estate are. Because the sale is simply in the nature of a quitclaim without warranties or representations, the Court concludes that the Trustee may convey whatever interest the estate may have in the these specific assets included in the Estate Property by quitclaim deed and/or assignment or other form of conveyance. This conveyance is as is, where is and if is, without the necessity of an adversary proceeding and without this court needing to make a specific determination of whether the claims are property of the estate.

## THE LLC AND LIMITED PARTNERSHIP INTERESTS

The Debtor has additional arguments specifically pertaining to the transfer restrictions on limited partnership interests and LLC membership Units. The restriction clauses do not allow for transfer of the "Partnership Interest" and "Member's Units" respectively without following

---

[22] *Id.*

processes outlined in the documents. The Debtor argues that the estate cannot have a greater right to property than the Debtor did at the time of filing and consequently the restrictions must be complied with. It should be noted that the Debtor does not argue that the Interest/ Units cannot ever be sold, but only that if they are to be sold then the sale process must comply with the transfer restrictions.

The Trustee has two arguments on why he should be able to sell the economic rights of both the LLC and LP interests. First, he argues that the only possible interest the estate could have is economic rights and that the restrictions only apply to managerial rights. He asserts 4 reasons that support his position, any one of which would suffice to restrict estate property to economic interests. First, he cites to sections of the Utah Code which state that a partner/ LLC member entering bankruptcy is an event of dissociation and the only rights he may have are distributional. Second, the Utah Code specifically states that management rights are never transferable under either organizational structure unless the Limited Partners or Members assent. Third, that the businesses in question are dissolved and therefore the only existing rights that anyone would have, be they a member or not, is to the distribution in the windup. Fourth, the fallback argument of the Trustee still hinges on the restrictions only applying to management rights. He requests that the Court should determine that the Trustee is only selling economic rights. He argues that splitting the economic rights away from the managerial rights allows for this sale.

The Court will take these rights one at a time, with the LP INTERESTS considered first as there are similar arguments for the LLC and the analysis overlaps a bit. To understand whether the Trustee may sell whatever interest the estate has in the LP, there is a need to know what the restriction clause means. There is no definition section of the LP Agreement which was included with the Debtor's objection to the sale and to which there was no question raised as to its

8

consideration. However, the Trustee wishes the Court to make the distinction between a transferable economic right and a non-transferable management right. Because the Utah Statutes refer to these as "distributional rights" and "governance rights," the Court uses those terms interchangeably with economic and management rights respectively.

The text of the agreement is clear in that section 10 states no limited partner may transfer any Partnership Interest without giving 30 days to other general and limited partners to exercise a right of first refusal.[23] Under the LP Agreement at section 29, the filing of a bankruptcy petition by one limited partner shall act as a voluntary transfer with the same restrictions just mentioned.[24] It is the law of this circuit as provided in the *Graves* case from 2010, that the transfer restrictions can still impact the ability and manner in which the Trustee disposes of the property.[25] That case provides: "a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest."[26] The rule has been applied before in other areas of the country in the context of transfer restrictions on interests in businesses in cases like *Todd* from South Carolina and *Dean* from Arkansas.[27] However, the question remains as to what constitutes a Partnership Interest in order to determine the import and scope of the limitation.

Statutory guidance at U.C.A. § 48-2e-1101(16)(d) defines "interest" to include a "partnership interest in a limited partnership" yet fails to define partnership interest. Additionally,

---

[23] Limited Partnership Agreement §10.
[24] Limited Partnership Agreement §29.
[25] *In re Graves*, 609 F.3d 1153, 1156 (10th Cir. 2010).
[26] *Id. quoting In re Sanders*, 969 F.2d 591, 593 (7th Cir.1992).
[27] *In re Todd*, 118 B.R. 432, 435 (Bkr. D.S.C. 1989); *accord, In re Dean*, 174 B.R. 787, 789 – 790 (Bkr. E.D. Ark. 1994) (collecting cases).

as the Trustee argues, U.C.A. §§ 48-2e-1101(6) and (14) show that the statutory structure intends to differentiate between a distributional interest on the one hand and governance interest on the other. Distributional interests include the "right under an unincorporated entity's organic law and organic rules to receive distributions from the entity." That statute further provides:

> Governance Interests:
>
> Means a right under the organic law or organic rules of an unincorporated entity, other than as a governor, agent, assignee, or proxy, to: (a) receive or demand access to information concerning, or the books and records of, the entity; (b) vote for or consent to the election of the governors of the entity; or (c) receive notice of or vote on or consent to an issue involving the internal affairs of the entity.

Roy Nielson Hafen is not a governor under the relevant definition. Likewise, it is hornbook law that unless otherwise stated, Limited Partners are not agents of the business. It's also hornbook law that general partners are agents, but that's not what we're dealing with here.[28] Nothing here shows that any of the rights in question were delegated to Hafen by proxy/ assignment but were instead retained by him in his capacity as a Limited Partner. Unlike the Trustee's argument, there is nothing in the text of the statute that shows that the term "partnership interest" definitively includes only one or the other type of right. Here the Debtor had economic rights to distributions and the Debtor clearly possessed at least some governance right to demand books and records, so the possibility of the restrictive term including both types of interests is still present.

---

[28] Mark A. Sargent & Walter D. Schwidetzky, *S.E.C. LLC Handbook, § 3:29. Management, agency, and dissolution* (September 2020 Update) ("Limited partners, in their capacity as limited partners, are not agents of the limited partnership and therefore, for example, cannot enter into binding contracts on its behalf."); James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations §1:9 The Limited Partnership* (December 2019 Update) ("Unlike partners in general partnerships,21 limited partners are not ordinarily agents of the partnership and thus do not have the authority to bind the partnership simply because of their position as limited partners.").

The Court questions the applicability of the section of the Utah Code that the Trustee cites to show that economic rights are definitively transferable here. The Trustee points to U.C.A. § 48-2e-702(1)-(3) for the proposition that a partner cannot transfer governance rights and simultaneously that the economic right to distributions is freely transferable. However, just because the statutory framework allows for economic rights to be transferred does not mean that restrictions can never be placed on those rights by private agreement. The argument for unreasonable restraint on alienation of property was not argued here and does not seem plausible. In fact, the Utah Code U.C.A. §48-2e-702(6) contemplates that transfer restrictions by private agreement can change this default rule so that both types of right may become non-transferable.[29] Moreover, the court is not convinced that the term in the restrictive clause is limited to governance rights because this reading of the LP Agreement would be duplicative. Section 36 of the LP Agreement states that Utah law governs, which includes the statutory restriction on governance rights just discussed.

Additionally, there are some court decisions treating the interests, which coincides with the ordinary meaning of the term in the Agreement. While there are no Utah cases directly defining the scope of what a "partnership interest" is, the term is typically used as a generic reference to the full array of rights that a partner has, both economic and managerial.[30]

---

[29] U.C.A. §48-2e-702(6).

[30] *Casey v Chapman*, 98 P.3d 1246, 1249 (Wash. Ct. App 2004) ("Specifically, he sought a judgment determining that the sale was valid and that the purchaser acquired the partnership interest Casey pledged, including "all voting rights, equity interests and economic interests."); *Brennan v. Brennan Associates*, 41 Conn. L. Rptr. 248 2006 WL 1230089 (Conn. Super. Ct. 2006) ("The court turns next to the nature of the partnership interest that may be conveyed by the defendants," and proceeded to consider both economic and managerial interest as sub parts of the term); *Green v. Bellerive Condominiums Ltd.*, 763 A.2d 252 (Md. Ct. Spec. App. 2000) (deciding whether partnership interest transferred both economic and management rights or solely economic rights); *Deutch v. Wolff*, 7 S.W.3d 460 (Mo. Ct. App. 1999) (determining that court had power to order transfer to the whole of the partnership interest, which included both distribution and management rights); *Olmstead v. F.T.C.*, 44 So.3d 76, (Fla. 2010) (using statutory provisions to conclude that "interest" in an LLC context means all distributive and voting/ management rights); *Block v. Magura*, 949 N.E.2d 1261 (Ind. Ct. App. 2011) (finding a letter of intent to sell

Finally, the plain language of the words in the agreement is harmonious with the use of "Partnership Interest" to mean the collective of all the interests one has in a partnership. Black's Law Dictionary defines an interest as "A legal share in something; all or part of a legal or equitable claim to or right in property… the word includes any aggregation of rights, privileges, powers, and immunities."[31] Putting together this definition with the word "partnership" would indicate that the restrictions apply to any of the aggregate rights or powers to manage as well as any rights to distributions which were able to be exercised by the debtor at the time of filing. Even under the Trustee's backup position (i.e. the fourth reason stated just previously), the Trustee seeks to sell the restricted economic rights.

Under 10th circuit precedent in *Graves*, the estate may not be enlarged by the act of filing bankruptcy. The estate only owns what the debtor owned at the time of filing and the Trustee may only convey that which the debtor could have conveyed. *Nemo dat quod non habet*. This includes the transfer restrictions on both managerial and economic rights. The Court is persuaded by the Debtor and the joinders arguments on the sale of these LP and LLC rights. The Court does not see anything in the Bankruptcy Code or Rules that would supersede the application of these sales restrictions.

The bottom line on this analysis is that the Court only concludes that the restrictions in either the LP or LLC agreements and statutes apply in the current motion of the Trustee to sell the LP and LLC rights.

---

partnership interest was definite enough to convey both economic and managerial rights); *Law on behalf of Robert M. Law Profit Sharing Plan v. Zemp*, 408 P.3d 1045 (Or. 2018) (determining that a court could assign the whole partnership interest but that the assignee but statute prevented the exercise of management rights).
[31] Black's Law Dictionary (11th ed. 2019).

As the Debtor has pointed out at oral argument, sales of these kind of interests are still possible so long as they comply with the right of first refusal and other restrictive provisions. A case from the western district of Michigan bankruptcy court shows that these restrictions can be satisfied through auction, but the holder of the right needs to be able to participate.[32] Here, the Trustee sent notice to all creditors on the matrix and seeking higher and better offers.[33] However, at the time of the notice, the matrix did not contain the LP limited or general partners, who are coincidentally the defendants in the State Case. Accordingly, the nature of an auction is that every participant can ante up when the time comes to exercise a right of first refusal, but the holders of the right were not made aware of their opportunity to do so.

With all of the foregoing analysis in mind, the LP Interests may be sold by auction and acceptance of higher and better offers but must occur in a context where the limited and general partners are given notice and following the LP agreement terms as well as Utah law. However, it still needs repeating that the Trustee is only seeking to sell these rights, "as is, where is and if is."

Now, as to the LLC interests, The LLC Operating Agreement, which was also attached to the Debtor's objecting submissions, contains language similar to the LP agreement which leads to the same conclusion as stated just now regarding the LP rights, that the restriction applies. However, the analysis is simplified by the use of the word "Units" in that agreement. Section 8.1(a) of the LLC Operating Agreement reads:

> If at any time a Member proposes to sell, assign, or otherwise dispose of all or any portion of such Member's Units, such Member shall first make a written offer to sell such units at a price determined as provided in Article 8.1(b) below and on terms and conditions set forth in Article 8.1(c).

---

[32] *In re Cormier*, 382 B.R. 377 (W.D. Mich. 2008).
[33] Docket Nos. 97 & 98.

13

While there remains no definition section in that Operating Agreement either, the document assigns the powers of voting and distribution of profits on a per-Unit basis. Accordingly, the sale of a Unit encompasses both economic and managerial rights.

An almost identical statutory structure produces definitions with the same meanings as previously stated in the LP analysis, with the same issue of being duplicative if only restricting managerial rights due to section 1.1 organizing the entity under Utah law.[34] The parties put forward no countervailing argument or evidence to show that anything less than any portion, be it economic or managerial, would be restricted. Accordingly, this provision also applies to the Trustee's sale. Exactly like the LP Interests outlined above, the LLC Units may be sold in compliance with the restrictions through a proper auction. However, the LLC members were also not given notice and therefore the sale could not have complied with the restrictions.

## **AVOIDANCE RIGHTS**

Now as to the avoidance rights, the Trustee and the proposed purchasers/ Creditors stipulated at the October 29 hearing that if the proposed sale of the avoidance powers were problematic for the Court to approve, each would be willing to forego the assignment, and sever the avoidance powers from the sale to proceed with the sale of the remaining assets for the same price. With that stipulation, the Court defers to the Trustee's and buyers' willingness to sever this part out of the sale and it is not to be included in the sale.  It is noted that there are decisions from other courts which have addressed this and if the parties here wish a further determination on that from this Court, it will allow argument and a hearing on it in a subsequent hearing.

---

[34] ACOM, LLC Operating Agreement §1.1 (organizing LLC under laws of the State of Utah).

14

**CONCLUSION:**

In accordance with the just stated reasoning, the water rights and any interest under the C.A.R. trust or CAR A Trust, may be sold now by quitclaim/ assignments without warranty or representations. The interests in the LPs and LLC may be sold, but only by following the processes outlined in those agreements. The avoidance actions are excluded from any sale by agreement of the Trustee and the proposed buyers.

Any dispute arising out of what particular property interest was conveyed, if any, through the deeds or assignments will probably be sorted out in state court as it will be called upon to determine property rights. The Court recognizes that it previously was willing to defer to the state court issues on standing, and does not want to offend the parties or any appellate court by stating that the state court should determine what interests were conveyed if any.  However, it appears to this Court that further defining what is proposed to be sold by this Court is not necessary.  This Court will decide the specific standing issues as directed by the BAP later.  The Court can see that the rights that are proposed to be sold could have some impact on the state court case. But, because that issue is not in front and center in connection with this motion to sell, the Court will not rule on it in connection with the current Trustee's motion.

The court determines that an additional hearing will be necessary to approve or disapprove the sale of the LP and LLC interests. The Court further determines that such hearing will not be conducted until after the Trustee's compliance with the LP and LLC agreements. The Trustee and objecting parties may submit briefing on the sufficiency of this compliance at least 7 days before the next hearing. Accordingly, the Court orders a status conference and continued hearing on the Trustees motion to sell on January 25, 2021 at 1:30 p.m.   The Court determines that such gives the Trustee sufficient time to consider his rights under the agreements and proceed with any

auction and to give the Court a status report of the sale by that date. The Court is willing to extend that date upon a showing of cause by any of the parties. At that status hearing, the Court will set a briefing and hearing schedule on all of the standing issues.

SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION REGARDING THE TRUSTEE'S MOTION TO SELL PROPERTY** shall be made on the following parties through the CM/ECF system:

ECF:

- Adam S. Affleck    adam-affleck@rbmn.com, andalin-bachman@rbmn.com;affleckar93359@notify.bestcase.com;jennifer-franklin@rbmn.com
- J. Kevin Bird    jkevinbird@birdfugal.com
- J. Kevin Bird tr    jkevinbird@birdfugal.com, kbird@ecf.epiqsystems.com;kbtrustee@aol.com;melanie@birdfugal.com;jkb@trustesolutions.net
- Matthew D. Ekins    matt@utahcase.com, amanda@utahcase.com
- Thomas D. Neeleman    courtmail@expresslaw.com, jennifer_neeleman@hotmail.com
- David L. Pinkston    bankruptcy_dlp@scmlaw.com, beckcasaday@hotmail.com
- David L. Pinkston    bankruptcy_dlp@scmlaw.com, beckcasaday@hotmail.com
- Mark C. Rose    mrose@mbt-law.com, markcroselegal@gmail.com
- Chris L. Schmutz    chrisschmutz.pc@gmail.com, hillaryschmutz@yahoo.com;r60588@notify.bestcase.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail –**

Roy Nielsen Hafen

PO BOX 2380

St. George, UT 84771

WASHINGTON-UT