**This order is SIGNED.**


**Dated: June 3, 2022**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 04-25018 |
| Roy Nielsen Hafen, | Chapter 7 |
| Debtor(s). | Honorable William T. Thurman |

## MEMORANDUM DECISION FOR PARTIAL RULING ON
## DEBTOR'S MOTION FOR SANCTIONS

The matter before the Court at this time is the Debtor's Motion for Sanctions for Violation of the Discharge Injunction (the "Motion") on remand from the Tenth Circuit Bankruptcy Appellate Panel (the "BAP"). This Memorandum Decision relates and overlaps, to some extent, to the litany of proceedings, pleadings, and rulings stemming from the reopening of this case in June of 2018. Previously, this Court issued a ruling on the Motion on June 6, 2019. Subsequently, on appeal, the BAP reversed and remanded this Court's decision on July 30, 2020. In the lengthy period between the BAP's decision and this Memorandum Decision, the case has been active on a number of matters, which will be used as reference throughout.[1] Importantly,

---

[1] A lengthy series of pleadings, proceedings, and rulings associated around the Trustee's attempts to sell property and/or rights of the estate. That series began on September 22, 2020. *See* Motion to Sell Property under Section 363, ECF No. 96. After a litany of objections, court orders, and subsequent motions to sell, the Court entered what would

this lengthy interim period between this Decision and the BAP's is due to an informal agreement between all the parties to defer this ruling until the Trustee's attempts to administer certain property of the estate had run its course. In late 2021, the Trustee was finally successful in administering certain property of the estate. The issue of the violation of the discharge is now at hand.

This matter has some extensive history that accompanies it. The Court will address some of the history throughout this ruling, particularly in the following Facts section. For a more complete understanding of the entire history and context under which this decision is issued, particularly the aforementioned activity during the period between the BAP's decision and this Memorandum Decision, the Court relies on its previous decision dated December 8, 2020, found at ECF No. 116, which is incorporated in this ruling. Hearings on the current matter, after remand, were held on March 24 and May 19, 2022. Appearing for the Creditors was Matthew D. Ekins, of Galian Welker & Beckstrom, L.C., and the Debtor, Roy Nielson Hafen ("Debtor"), was represented by Chris L. Schmutz, of Schmutz & Mohlman (together, the "Parties"). Appearances were also made by Adam S. Affleck as the Attorney to the Trustee and Kirk Harrison as a member of the Creditors. On remand, and after several years of additional litigation and further briefing by the parties, the Court adjusts its prior ruling.

## I.      JURISDICTION AND VENUE

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. The current Motion represents a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O), and may be heard and determined by this Court pursuant to 28 U.S.C. § 157(c). The Court has determined

---

be its final Memorandum Decision and Order on November 2, 2021, regarding the purported sale. *See* Memorandum Decision/Opinion and Order, ECF No. 200. Subsequently, the Trustee filed his report of sale on December 8, 2021. *See* Trustee's Report of Sale, ECF No. 205.

venue to be proper pursuant to the provisions of 28 U.S.C. § 1408. The Court finds notice for

considering the Debtor's Motion, pursuant to 11 U.S.C. §§ 105(a) and 524(a)(2), to be adequate

and proper in all respects.

## II.   FACTS

In compiling the factual record addressed in this decision, the Court adopts its findings in

each of its prior decisions on this matter, particularly its findings in two Memorandum Decisions,

dated June 6, 2019 (ECF No. 68) and December 8, 2020 (ECF No. 116). Thus, any facts not

mentioned in this section, but referenced within the Discussion section, are adopted as fact

herein.

The Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code

on March 30, 2004. The Debtor's schedules showed that the Debtor owned no real property on

the filing date and showed approximately $10,000 in personal property. The Trustee's Final

Report, issued on December 3, 2004, shows estate receipts of approximately $6,600. Most of this

amount was obtained by the Trustee via the sale of a horse trailer and a fifth wheel trailer. The

Debtor received his discharge, pursuant to 11 U.S.C. § 727, on July 21, 2004. No member of the

Creditors (defined hereafter) challenged the discharge of the Debtor or sought non-

dischargeability of any debt. The Debtor's bankruptcy case was closed on May 11, 2005.

The matters currently before the Court come at a much later date, beginning on or about

July 19, 2018, when a group of the Debtor's Creditors (the "Creditors" or "Harrison Group")

filed a State Court lawsuit (the "State Court Case" or "State Court Lawsuit") against particular

parties associated with the Debtor (the "Debtor's Affiliates"), as well as the Debtor himself. In

the State Court Case, the Creditors sought to recover from certain parties for property that had

been transferred to them by the Debtor prepetition and other claims. This group of Creditors—

i.e., Roger Oldroyd, Larry Adams, Jed Christiansen, Randy Simonsen, and Kirk Harrison as an assignee of claim from Scott Smith—were prepetition creditors of the Debtor, and they, sans Kirk Harrison, were listed in the schedules, as well as in the creditor matrix, filed by the Debtor. Kirk Harrison acquired the claim of a Scott Smith, a prepetition creditor of the Debtor who was similarly listed in the schedules and received notice of the case. As such, the Court finds each was properly on notice of the Debtor's bankruptcy back in 2004, and the Creditors previously did not contest this fact. Further, the Creditors clarify that the Debtor was a necessary party in the State Court Case but was essentially by name only, and no relief was being sought from the Debtor personally. After the initiation of the State Court Case, the Creditors filed a motion to reopen the Debtor's bankruptcy case on June 19, 2018. The Court entered an order granting the motion, thereby reopening the bankruptcy case on August 17, 2018. In addition, the court ordered a chapter 7 trustee to be appointed in the reopened case.

The Creditors' State Court Lawsuit alleges that, between 2000 and 2002, the Debtor unlawfully and fraudulently sold unregistered securities to the Creditors, which, in turn, resulted in damages to them. The State Court Lawsuit contains the following causes of action against the Debtor and co-defendants:

- (1) Fraudulent Concealment against the Debtor;
- (2) Constructive Fraud against the Debtor;
- (3) Fraudulent Misrepresentation by the Debtor;
- (4) Unlawful Sale of Unregistered Securities by the Debtor;
- (5) Securities Fraud by the Debtor;
- (6) Breach of Fiduciary Duty against the Debtor;
- (7) Negligent Misrepresentation against the Debtor;
- (8) Civil Conspiracy against the Debtor and co-defendants;
- (9) Fraudulent Transfer against the Debtor and co-defendants;
- (10) Declaratory Judgment against the Debtor and co-defendants;
- (11) Alter ego against the Debtor and co-defendants;

- (12) Unjust Enrichment for Constructive Trust against the Debtor and co-defendants.[2]

The State Court Lawsuit also alleges that the Debtor transferred ownership of real and personal property to the co-defendants (i.e., the Debtor's Affiliates). Upon review, those transfers were not disclosed in the Debtor's Statement of Affairs or Schedules. In the State Court Lawsuit, the Creditors seek to establish the liability of all the parties named, including the Debtor, but only seek to recover from the co-defendants. Essentially, as alleged by the Creditors, the Debtor is listed for the sole purposes of establishing liability, and no damages are sought to be recovered from him.

In response to the State Court Case, the Debtor filed the Motion here alleging violation of the discharge injunction on December 28, 2018, seeking an order of contempt and damages against the Creditors. The Debtor's main contention is that his inclusion, as a named defendant, in the State Court Case and the Creditors' pursuit of the State Court Case violated the discharge. On June 6, 2019, the Court entered an Order denying the Debtor's Motion. The Debtor moved to amend the Court's Order, which was subsequently denied. Thereafter, on August 21, 2019, the Debtor filed a Notice of Appeal and Statement of Election to the Tenth Circuit Bankruptcy Appellate Panel ("the BAP") on the Court's orders.

The BAP entered its opinion reversing the Court's orders and remanded the matter back to this Court for determinations on the issues surrounding claim ownership and standing, and then to reconsider whether the discharge injunction had indeed been violated.[3]

As previously referenced, during the interim period between the BAP's decision and this Memorandum Decision, the Trustee sold some of the estate's property to the Creditors. There

---

[2] *See* First Amended Complaint pp. 17-37, filed as Exhibit A to the Objection to Motion for Sanctions for Violation of the Discharge Injunction, ECF No. 50.

[3] *Hafen v. Adams, et al. (In re Hafen)*, 616 B.R. 570 (B.A.P. 10th Cir. 2020).

was no determination made by the Court as to whether the chapter 5 rights of the Trustee could be sold and, importantly, they were not included in the sale.[4]

## III.    DISCUSSION

Prior to the order entered by this Court on June 6, 2019, the parties had requested this Court defer on the issue of standing to the state court, to which this Court obliged in its order. In review, the BAP found this was in error. As such, the BAP, in its remand, tasked this Court with "determin[ing] whether the causes of action set out in the Complaint are property of the bankruptcy estate, and, after making that determination, determine whether the [Creditors] had standing to bring those claims."[5] The concurrence opted for an approach in line with the decision in *In re Robben* and suggested that this Court examine each claim of the Complaint asserted against the Debtor and determine if it is within the scope of the § 524(a)(2) injunction and whether the § 524(e) exception applies.[6] The Court has elected to follow this approach below, as well as the other directives from the BAP.

In this Discussion section, the Court first addresses mootness. The Court then moves to the issue of claim ownership, and subsequently, the Creditors' standing to bring the claims if they, in fact, own the claims. The Court then follows the lead of the BAP's concurrence and analyzes each individual claim as to whether the Debtor's inclusion in the State Court Lawsuit has violated his discharge injunction.

### A. Mootness

The Creditors argue the Debtor's Motion has somehow been rendered moot due to a sale agreement between the Trustee and the Creditors in the case. The Court understands the

---

[4] The Trustee's Chapter 5 Rights/Powers, as they are often referred to as, are those set forth in the Bankruptcy Code, specifically 11 U.S.C. §§ 544, 545, 547, 548 and 549.
[5] *Hafen v. Adams, et al.*, 616 B.R. at 581.
[6] *See id.* at 581-82 (Somers, J., concurring) (citing to *In re Robben*, 562 B.R. 469 (Bankr. D. Kan. 2017)).

principles of the Creditors' argument. However, the Creditors are mistaken. The Motion for

Sanctions exists in and of itself, regardless of the sale. As the Debtor astutely notes, the presence

of monetary sanctions precludes mootness since "a case is not moot so long as a claim for

monetary relief survives."[7] If a violation occurred, it was before the sale by the Trustee, and

accordingly, this argument of the Creditors is not persuasive. Although the Creditors now own

certain property of the estate via the December 2021 sale, the Court finds the Debtor's Motion is

anything but moot.[8] Accordingly, as is later discussed, the Court finds the Debtor has standing to

bring this Motion for Sanctions.[9]

### B. Claim Ownership and Standing

Determination of the ownership of the claims at issue, and the Creditors standing to bring

such claims, is the primary purpose of this Court's decision, as it was the primary directive from

the BAP. The Court follows this directive in two steps: first by determining claim ownership,

then by addressing standing. The specific direction from the BAP is as follows:

> When the matter involves the bankruptcy estate, a bankruptcy court's
> jurisdiction is exclusive to accomplish one of the primary goals of the Bankruptcy
> Code—the equitable administration of claims. The record on appeal is insufficient
> for this Court to determine whether the Complaint alleges causes of action
> belonging to the bankruptcy estate. Accordingly, because the record does not
> include findings of fact and conclusions of law on whether the Investors' claims
> involve property of the estate, we REVERSE and REMAND so that the
> Bankruptcy Court may determine whether the causes of action set out in the
> Complaint are property of the bankruptcy estate, and, after making that
> determination, determine whether the Investors had standing to bring those
> claims.[10]

Pursuant to this specific direction, this Court now addresses claim ownership.

---

[7] *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (internal citation omitted).
[8] The Creditors argued that the matter was moot upon the Trustee's sale of claims. The Court disagrees. This Motion
for Sanctions, as well as any violation of the discharge injunction, exists in and of itself. *See In re Otero*, 498 B.R.
313 (Bankr. D.N.M. 2013); *see also Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002).
[9] *See infra* note 29.
[10] *Hafen v. Adams, et al. (In re Hafen)*, 616 B.R. 570, 581 (B.A.P. 10th Cir. 2020).

### 1. Claim Ownership.

Pursuant to 28 U.S.C. § 1334(e)(1), the "district court in which a case under title 11 is commenced or is pending shall have *exclusive* jurisdiction (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[11] The Supreme Court has extrapolated further, ruling that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[12] The Tenth Circuit Court of Appeals ("Tenth Circuit") has articulated that because of this holding, "[a] bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case."[13] Thus, as the BAP found, "[t]he jurisdiction to determine what is property of the bankruptcy estate lies exclusively with the bankruptcy court."[14]

In undertaking this jurisdictional duty, the Court believes it must delve into an analysis of both a Trustee's chapter 5 rights, as well as those rights created by state law. The Court finds that the ownership of the bankruptcy rights, like those aforementioned chapter 5 rights, are owned and controlled by a trustee, but that ownership does not preclude the existence of rights created under state law to similarly belong to other parties, like the Creditors here.[15] Both these sets of rights exist concurrently but the state law rights are paused during the administration of the

---

[11] *See* 28 U.S.C. § 1334(e)(1) (emphasis added); *see also* DUCivR 83-7.1 ("Under 28 U.S.C. § 157(a), unless a rule or order of this court expressly provides otherwise, any and all cases under Title 11 and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for the District of Utah for consideration and resolution consistent with the law.").

[12] *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995) (internal citation omitted); *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015).

[13] *Gardner v. United States*, 913 F.2d 1515, 1518 (10th Cir. 1990).

[14] *See In re Hafen*, 616 B.R. at 578.

[15] Importantly, this concurrent ownership does not necessarily entail that the pursuit of claims may be done concurrently.

estate. The Court's reasoning is grounded in 11 U.S.C. §§ 524(e),[16] 541,[17] 544,[18] and 546(a)(1),[19] as well as § 554, by analogy.[20]

It is imperative to note that when a debtor declares bankruptcy, an estate is created of the debtor's prepetition property, and that estate encompasses "all kinds of property, including . . . causes of action."[21] As such, only the Trustee in the instant clearly possessed the § 544 rights and remedies, and possibly other rights and claims, which are very similar to those that the Creditors seek to assert under state law. However, if the Trustee is not going to pursue those kinds of rights, he is essentially and informally abandoning them; thereby, effectively relinquishing the standing to bring them to the Creditors. The result of which would effectively bar Creditors' ability to recover from non-debtor third parties, due to the Trustee's reluctance to pursue claims. The Court believes this would constitute an undesirable result that is at odds with the overall policy goals of the Bankruptcy Code.

As such, the Court finds that due to the statute of limitations presumably running on enforcing the chapter 5 rights,[22] coupled with the Trustee's inaction for over a decade, that the claims at issue will not be pursued by the Trustee. Thus, the Creditors in the State Court Lawsuit could very easily have believed that due to the above, along with the Trustee's recommended closure of the case and administration of the estate outlined in the Trustee's Final Report back in

---

[16] A debtor's discharge does not affect the liability of any other entity, and thus it logically follows that those claims may exist and be owned by creditors to bring against both the debtor and non-debtor third parties after the discharge of the debtor.

[17] Claims become property of the estate, but not necessarily exclusively so.

[18] Trustee operates a successor in interest, particularly in regard to creditors' claims, but those interests and claims still exist outside of the bankruptcy context.

[19] The existence of a statute of limitations, outside of those related to the actual claims themselves, raises more than a mere inference to the ownership of claims concurrently by both trustee and creditors.

[20] The notion that property not abandoned remains property of the estate, in conjunction with the ability to bring claims against a discharged debtor for establishing liability to recover from third parties, further reinforces the notion that certain claims can be held within the estate, by the trustee, but also exist and be owned by other parties, i.e., creditors.

[21] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983); *see* 11 U.S.C. § 541(a)(1).

[22] *See* 11 U.S.C. § 546.

9

2004,[23] that they both owned the state created claims and now possessed the requisite standing to

bring them. The Court duly finds the Trustee had sole right to pursue the bankruptcy created

rights; and now, based upon the actions and representations of the Trustee, it is now again the

Creditors' right to resume pursuing the state law created rights.[24]

### 2. Standing.

As directed by the BAP, the Court now needs to determine the Creditors' standing to

pursue those rights. Absent the bankruptcy filing, the Creditors would have possessed the

constitutional standing to assert their state law claims, as the claims arose prepetition from a

series of transfers for which they claim damaged their position.[25] As hinted to during discussion

on contemporaneous claim ownership, the claims are not unique to the estate. As an

accommodation to efficient administration, courts have generally held that only the Trustee may

pursue those claims. The claims are not subsumed completely into the Rights of the Trustee but

still exist. More specifically, as alluded to in *Wilson Armetale*, the Trustee is the person who

holds the "bankruptcy standing" to bring the claims, but assuming those claims were not brought

in the bankruptcy, the Creditors retain the constitutional standing to bring those claims in state

court.[26] Accordingly, the Trustee alone held the bankruptcy standing to bring the claims in this

Court pursuant to the chapter 5 rights. However, as the Trustee here has elected not to do so,

there should be nothing to hinder the Creditors' standing to bring their state law claims or rights

in state court against the Debtor's Affiliates. The Creditors' constitutional standing to bring the

claims against the non-debtor third parties, and the Debtor by name only, is sufficient for the

---

[23] Trustee's Chapter 7 Asset Final Report, ECF No. 19.
[24] The rights that the Creditors are pursuing in state court are not specifically created by, nor bound to, the bankruptcy court. Simply put, those rights may exist outside of this court.
[25] *See Artesanias Hacienda Real S.A. de C.V. v. N. Mill Cap., LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273 (3d Cir. 2020).
[26] *See id.*

State Court Case; however, as to the claims against the Debtor, there may still be sanctions for any violation of the discharge injunction. Lastly, the Court notes the Debtor's admission at the May 19, 2022 hearing, that there is no objection to the Creditors proceeding against the co-defendants in the State Court Case, or even the Debtor himself as the trustee of the C.A.R. Trust.

### C. Claims and Violation of the Discharge Injunction

After establishing the Creditors' ownership and standing to bring the assortment of claims, the Court needs to determine whether the bringing of any of those claims, and naming the Debtor as a defendant, violated the Debtor's discharge injunction. In undertaking this analysis, the Court opts to follow the suggestion from the concurrence from the BAP in analyzing this issue, utilizing the tests in *Robben* and *Walker* conjunctively.[27] Thus, the Court, on a claim by claim basis, first analyzes whether the claim asserted is within the scope of the § 524(a)(2) discharge injunction, and if so, whether the § 524(e) exception applies. Thus, a recitation of the analysis in each test is required.

Pursuant to 11 U.S.C. § 524(a)(2), a bankruptcy court has jurisdiction to determine the extent of liability on claims of a violation of the discharge. Further, § 524(a)(2) establishes the discharge injunction, which essentially functions to preserve a debtor's fresh start.[28] With that said, the Tenth Circuit has articulated that a debtor may file a motion to sanction a creditor for violating § 524(a)(2), pursuant to the Court's civil contempt powers derived from 11 U.S.C. § 105.[29] However, this shield of a discharge injunction is not intended to additionally shield third

---

[27] *In re Robben*, 562 B.R. 469 (Bankr. D. Kan. 2017); *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991).
[28] 11 U.S.C. § 524(a)(2).
[29] *See In re Otero*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (citing to *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306–07 (10th Cir. 2008)).

parties who may be liable on the debtor's discharged claims.[30] Therein, the interplay between the § 524(a)(2) and the § 524(e) exception is critical.

11 U.S.C. § 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." The Tenth Circuit has articulated that "this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity."[31] However, this exception "hinges 'upon the condition that the debtor would not be personally liable in a way that would interfere with the debtor's fresh start in economic life."[32] Importantly, defense costs incurred by a debtor may frustrate the "fresh start."[33] And as will be discussed below, the Court is persuaded by the Ninth Circuit's finding that the very same civil contempt powers of 11 U.S.C. § 105, that the Tenth Circuit says enables a debtor to move for sanctions under, allow an "aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction."[34]

Prior to the Court's analysis of the twelve claims, the Court will further simplify the requirements for its analysis of §§ 524(a)(2) and 524(e). To be afforded the § 524(e) safe harbor from the discharge injunction in the instant, the Creditors need show that they have: (1) waived any collection rights against the discharged Debtor (as to not frustrate the Debtor's "fresh start"); and then, (2) show that "a judgment against the Debtor is *required* to establish third party

---

[30] *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991) (internal citation omitted).
[31] *Id.* (emphasis added).
[32] *Id.* (quoting *Owaski v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.)*, 883 F.2d 970, 975 (11th Cir. 1989)).
[33] *See In re Robben*, 562 B.R. 469, 479 (Bankr. D. Kan. 2017); *see also In re Walker*, 927 F.2d at 1143–44; *see generally In re Jet Florida Sys.*, 883 F.2d 970, 976 (11th Cir. 1989) (discussing fears of frustrating the "fresh-start policy embodied in the Code").
[34] *See Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002).

12

liability."[35] There is no dispute the Creditors satisfied the first condition, in that they have

waived collection rights. As for the second condition, the Court must analyze each individual

claim brought against the Debtor as a named defendant, and as spelled out in *Robben*, and then

determine whether "a judgment against the Debtor is *required* to establish third party liability."[36]

The Court adopts the *Walker* court's emphasis on the term "prerequisite" because to be afforded

the § 524(e) safe harbor, the Creditors need show that the Debtor's liability on the discharged

claims *must* be established as a *prerequisite* to recovery from another entity.[37]

Thus, the Court now analyzes each of the twelve claims brought by the Creditors in the

State Court Lawsuit, which names the Debtor as a non-liable co-defendant, within view of §§

524(a)(2) and 524(e), while relying on the analysis of the statutory language from *Robben* and

*Walker*.

### 1. Fraudulent Concealment Against the Debtor.

The Court finds this claim has failed to satisfy the *Walker* prerequisite test. This claim of

fraudulent concealment against the Debtor provides no prerequisite or condition to recovery from

a third party. Again, the Court emphasizes the § 524(e) safe harbor provides a narrow window to

establish liability against a debtor on discharged claims, only where a "judgment against the

Debtor is required to establish third party liability." As will be echoed by the Court on the

following six claims, the liability of the Debtor may be "helpful" in prevailing against the

Debtor's Affiliates on this claim. But, establishing the Debtor's liability for fraudulent

concealment has not been shown to be a prerequisite for any recovery from the Debtor's

---

[35] *In re Robben*, 562 B.R. at 480 (emphasis added).
[36] *Id.*
[37] *See In re Walker*, 927 F.2d at 1142 (emphasis added).

13

Affiliates. The claim stands alone without the need for the Debtor to be a co-defendant. As such, this claim violated the discharge injunction.

### 2. Constructive Fraud Against the Debtor.

Similarly, the Creditors have failed to qualify for the § 524(e) safe harbor exception to the discharge injunction because this claim has not been shown to be a prerequisite for recovery from a third party. If establishing the Debtor's liability for constructive fraud will help establish the liability of the Debtor's Affiliates, or of any third party for that matter, the Creditors are certainly entitled to call the Debtor as a witness. However, no showing from the Creditors has led the Court to believe the Debtor's liability for constructive fraud is a required condition to recovery from another entity. As such, this claim violated the discharge injunction.

### 3. Fraudulent Misrepresentation by the Debtor.

Again, at the risk of appearing repetitive, the Creditors have failed to qualify for the § 524(e) exception to the discharge injunction because this claim has not been shown to be a prerequisite for recovery from a third party. The Debtor's liability for fraudulent misrepresentation has not been shown to be a prerequisite for recovery from any third party. As such, this claim violated the discharge injunction.

### 4. Unlawful Sale of Unregistered Securities by the Debtor.

Although legally distinct, the result is the same. This securities claim does not require the Debtor's liability be established in order to recover from any third parties, even those assumed to be the buyer in this scenario. To the contrary, the third party's liability, as to the unlawful purchase of unregistered securities, can be established without the Debtor's inclusion as a named defendant. Similar to the following claim, the establishment of the Debtor's unlawful sale of unregistered securities is not necessary to establish the unlawful purchase of any securities by the

third party, and vice versa. As such, this claim violates the § 524(a)(2) discharge injunction and is not subject to the protection of the § 524(e) safe harbor exception.

### 5. Securities Fraud by the Debtor.

Similar to the above, the Creditors have failed to show that the Debtor's liability for securities fraud is a prerequisite for recovery against another entity. Thus, this claim has violated the Debtor's discharge injunction, and is similarly not protected by the § 524(e) exception.

### 6. Breach of Fiduciary Duty Against the Debtor.

The bringing of this cause of action is, again, a violation of the Debtor's discharge injunction. Put succinctly, this Claim pertains to the Debtor and was discharged by this Court's Order of Discharge on July 21, 2004. This claim against the Debtor is in direct violation of the § 524(a)(2) discharge injunction. The Debtor's liability for breach of fiduciary duty is not a prerequisite for recovery against the non-debtor third parties, and thus, this claim is not protected by the § 524(e) safe harbor exception.

### 7. Negligent Misrepresentation Against the Debtor.

Again, this Claim pertains to the Debtor and was discharged by this Court's Order of Discharge on July 21, 2004. This claim is similar to the preceding's claim, in that its use for establishing recovery against a non-debtor third party in a State Court Lawsuit is only tenuous, and is not a prerequisite for recovery from a third party. As such, this claim is not afforded the § 524(e) safe harbor and is thereby in violation of the § 524(a)(2) discharge injunction.

### 8. Civil Conspiracy Against the Debtor and Co-Defendants.

Civil conspiracy, by its very nature, is a cause of action that is jointly and severally liable as to each co-conspirator. "[A] private plaintiff need 'not sue all the conspirators, but may

choose to proceed against any one or more of them.'"[38] Thus, rather explicitly, every co-conspirator need not be named for a conspiracy claim. As such, the Debtor is not a necessary party to prove third party liability in the State Court Case. This cause of action violated the discharge injunction.

### 9. Fraudulent Transfer Against the Debtor and Co-Defendants.

As the Creditors' Complaint is absent a reference to a particular statutory provision, the Court assumes the Creditors intend to bring this fraudulent transfer claim under the Utah Uniform Fraudulent Transfer Act ("UUFTA"), Utah Code Ann. § 25-6-1, *et seq*.[39] Even then, as is the case for most any fraudulent transfer claim in jurisdictions adopting the Uniform template, a judgment against either the transferor or transferee is not necessary for establishing liability against the other. Rather, the UUFTA requires only a claim against the transferor or transferee. *Cf.* Utah Code Ann. § 25-6-2(3). The Debtor's Counsel has cited a number of Utah Supreme Court cases, as well as 37 Am.Jur.2d, *Fraudulent Conveyances and Transfers* § 163, that affirm the notion that a debtor may be a proper party for a fraudulent transfer but is not a necessary party.[40] The Court is persuaded by this argument. Although the UUFTA is not specifically stated, the same analysis would almost certainly apply to any fraudulent transfer claim. As such, this claim has violated the Debtor's discharge injunction and does not qualify for the § 524(e) safe harbor as there has not been a showing that establishing the Debtor's liability is a prerequisite to recovery from any third parties.

---

[38] *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1251 (10th Cir. 1988) (internal citation omitted), *rev'd on other grounds, as recognized in Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).
[39] The Court notes the Act was re-numbered and re-named in 2017, but that the application of the new version applied only to transfers made after May 9, 2017. Presumably, the older version is at issue.
[40] *See* Debtor's Memorandum Regarding Violation of the Discharge Injunction, at pg. 18, ECF No. 214 (April 11, 2022).

## 10. Declaratory Judgment Against the Debtor and Co-Defendants.

The Creditors seek a declaratory judgment against the Debtor. The Court tends to agree with the Debtor's briefing on the matter as well. This claim is seemingly sought as a legal faculty in order to pursue the rest of their claims. As such, a declaratory judgment against the Debtor would not appear to be a prerequisite to recovery from any third parties. By its very nature, due to the broadness and inapplicability, the Court finds this claim violated the Debtor's discharge injunction.

## 11. Alter Ego Against the Debtor and Co-Defendants.

The Creditors' claim of Alter Ego against the Debtor is possibly the most complicated of the lot. There is some debate nationally, and some that took place during hearings on this matter, about where alter ego claims fit into the scheme of § 542 and § 544, i.e. as to who owns them and who has standing to bring them. The Court makes no determination on the ownership because even if the Court finds the Creditors own the alter ego claim, the result is the same.

Again, as repetitive as it has come to be, the Creditors have failed to show that establishing the Debtor's liability for alter ego is a prerequisite for recovery against any third parties in state court. The Debtor may be a valuable witness, his role is an important point of contention, and his actions may prove to be important evidence in establishing the liability of any third parties for acting as alter egos; but again, inadequate showing has been made that establishing the Debtor's liability for alter ego is a *prerequisite* for recovering from a third party. As such, the Creditors do not qualify for the § 524(e) safe harbor exception, and as a result, this claim violates the discharge injunction.

**12. Unjust Enrichment for Constructive Trust Against the Debtor and Co-Defendants.**

This claim is similar, conceptually, to the alter ego and fraudulent transfer claims, and renders the identical result. An unjust enrichment claim is based upon a party (here, the Debtor's Affiliates) receiving property without paying for it, or plausibly at a far discounted mark. Regardless, the impetus is on the recipient. The Debtor's inclusion in the lawsuit is, again, unnecessary. The Debtor's actions will likely prove vital in proving the Debtor's Affiliates' liability; however, the Creditors have not shown that the Debtor's liability for unjust enrichment is a prerequisite for recovery against any third parties. As a result, the Creditors failed to qualify for the § 524(e) safe harbor; thus, this claim is a violation of the Debtor's discharge injunction.

**D.  Judicial Estoppel**

To briefly address an argument of judicial estoppel raised by the Creditors, the Court first denies its applicability to the instant. The Creditors cite to reliable Tenth Circuit precedent in support of the notion that this Court should judicially estop the Debtor,[41] but the positions taken by the Debtor and the actions that have taken place throughout the lengthy pendency of this case are not enough for this Court to reach beyond the Bankruptcy Code and intervene.[42] The Court believes in, and that it should aim to protect, the finality of the discharge injunction and its

---

[41] Creditors' Reply Memorandum in Opposition, ECF No. 223 (May 6, 2022) (citing to *Fulsom Constr. Co., Inc. v. United States Fid. & Guar. Co.*, Nos. 03-6353, 04-6087, 2005 U.S. App. LEXIS 22152, at *15 (10th Cir. 2005)).

[42] The Creditor's Counsel made oral argument analogizing the instant case to the scenario in *Eastman v. Union Pac. R. Co.*, to which the Court finds distinguishable. *See* 493 F.3d 1151 (10th Cir. 2007). The court in *Eastman* found the Debtor's failure to list a pending lawsuit, one where he was set to recover a sizable amount, but list two collection suits against him to be "inconceivable." *See id.* at 1159. This finding is distinguishable from the instant, not only as *Eastman* pertains to legal claims, but that the purported transfer has been analyzed by the Chapter 7 Trustee and no action was filed to recover for the benefit of creditors.

effects, where appropriate.[43] As such, the Court opts not to exercise its discretionary powers of judicial estoppel for the purposes of frustrating the Debtor's "fresh start."

## IV. CONCLUSION

The Court's prior decision[44] was in the interest of judicial efficiency, finding the state court was the appropriate forum for determining standing to bring claims. However, on remand and upon the direction of the BAP, the Court has found the Creditors have standing to bring their claims, but subsequently, violated the Debtor's discharge injunction by naming him as a co-defendant. In conclusion, the Debtor's presence as a named personal defendant in every Cause of Action was not necessary for determining the third party liability of the other named defendants. More specifically, the Debtor's liability for any of the above claims is *not a prerequisite* for recovery against any other state court defendants. As such, the Debtor's inclusion as a named personal defendant in each claim of the State Court Case was a violation of the discharge injunction.

Further, the Court is persuaded that attorney's fees may represent proper injury and damages in the instant. The Creditors make a compelling argument that the Debtor's inclusion by name only has not injured the Debtor, and he therefore has no damages other than attorney's fees. The Creditors argued that defense costs incurred by a debtor may frustrate the "fresh start," but such costs alone do not constitute a basis to find that the injunction bars such claims, in part because the realities of litigation are likely to compel the third party to defend the underlying action.[45] However, the Court believes the *Walker* court's notion, solely in regard to attorney's

---

[43] *See In re Anderson*, 884 F.3d 382, 390–91 (2d Cir. 2018) ("Unlike the automatic stay, the discharge injunction is likely to be central to bankruptcy long after the close of proceedings . . . the discharge injunction . . . is absolutely integral to the fresh start assured by [a debtor's] bankruptcy proceeding.").
[44] Memorandum Decision/Opinion and Order, ECF No. 68 (June 6, 2019).
[45] *See In re Walker*, 927 F.2d at 1143–44; *see also In re Robben*, 562 B.R. at 479.

fees, to be distinguishable for the same reasons set out in *In re Tailored Brands*.[46] The *Walker* court focused on the mere possibility of defense costs; however, here, even in light of the lack of recovery sought against the Debtor, the notion that the Debtor may not incur substantial defense costs and instead be left to his own devices in a lawsuit against him is not a sensical approach to civil lawsuits. As such, the Debtor is nearly certain to incur defense costs, and as a result should be left out of the lawsuit, in line with the rigorous protections afforded to him by the discharge injunction.[47] At the May 19, 2022 hearing, the Creditors argued that the fees incurred were minimal, and that the Debtor would be electing to "voluntarily" represent himself in the State Court Lawsuit. However, the Court finds there is a likelihood of costs in an amount high enough to frustrate the "fresh start." Thus, the Court finds ample injury and cause to find that a violation of the discharge injunction has in fact occurred.

Aside from the ruling above, the Court wishes to make note that the Debtor's inclusion as a named defendant in the State Court Case is all that has been precluded as a result of this ruling. The State Court Case may continue against the other defendants, and even, as the Debtor admits, against the C.A.R. Trust that the Debtor serves as trustee of. The Debtor's participation in the lawsuit, as a key witness, would seem inevitable, and nothing in this ruling precludes such. To reiterate, the discharge injunction is an imperative function of the Bankruptcy Code, and the Debtor is afforded its protection from the claims levied against him; but, the injunction does not protect the Debtor from participation in the State Court Case as the parties and the state court find fit and necessary for purposes of claims levied against other parties.

---

[46] *In re Tailored Brands*, 2021 WL 2021472 at *4, n.6 (Bankr. S.D. Tex. May 20, 2021) ("In *Walker*, the Tenth Circuit noted that, in certain instances, pre-petition plaintiffs may be allowed to continue their litigation against a discharged debtor even though the debtor will incur defense costs. In doing so, the Walker court relied on cases in which "the [post-petition] cost of defending [a lawsuit]" was not found to be "great prejudice" barring relief from the automatic stay." (internal citations omitted)).
[47] *See In re Anderson*, 884 F.3d 382, 390–91 (2d Cir. 2018).

For the foregoing reasons, the Court determines that there was a violation of the discharge injunction. The Creditors violated the protections of the § 524(a)(2) discharge injunction by naming the Debtor as a defendant. The Creditors have not shown how or why establishing the Debtor's liability for any of the twelve claims was a prerequisite to recovering from the other defendants in state court. As such, the violations of the discharge injunction are not protected by the § 524(e) safe harbor. Accordingly, this Court will grant the Debtor's Motion for Sanctions and finds damages in the amount of appropriate attorney's fees incurred. A separate order on this partial ruling accompanies this decision. A separate hearing on the matter of damages will be scheduled by a representative of the Clerk's office after contacting the parties, prior to the final ruling to be issued on the Motion by this Court.

----------------------------------END OF DOCUMENT------------------------------------

**SERVICE LIST**

Service of the foregoing **Memorandum Decision for the Partial Ruling on the Debtor's Motion for Sanctions** shall be made on the following parties through the CM/ECF system:

- **Chris L. Schmutz** –          chrisschmutz.pc@gmail.com

- **Matthew D. Ekins** –          matt@utahcase.com

- **J. Kevin Bird, tr.** –          jkevinbird@birdfugal.com

- **Adam S. Affleck** –          adam-affleck@rbmn.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Roy Nielsen Hafen
P.O. Box 2380
St. George, UT 84771

Kirk Harrison
112 Stone Canyon Road
Boulder City, NV 89005